We are ready for our first case, Liberian Community Association v. Malloy. May it please the court, Delaney Gilo, law student intern for the appellants, one of whom, Ryan Boyko, is here with us in the courtroom today. Plaintiffs in this matter are represented jointly by the Legal Services Organization at Yale Law School and Jenner and Block, so we have decided to split opening and rebuttal, and my colleague Jeremy Ursha will be offering that rebuttal. You may proceed. Thank you. In excusing the state's unwarranted confinement of plaintiffs in this case, the court below applied the wrong legal standard, deprived plaintiffs of any opportunity for discovery, and most critically, resorted to Lochner-era law to reach a holding that is wildly out of step with modern-day due process jurisprudence. Even giving defendants every benefit of the doubt, no reasonable official would have thought it legal to confine plaintiffs and their children to a basement for three weeks without providing them notice of their rights, all while knowing that they posed no legitimate risk to public safety. How do you respond to the state of Connecticut's argument that there's just no clearly established law that Dr. Mullen could have violated? Plaintiffs averred that the clearly established legal standard is straightforward and has been made clear both in the Connecticut statute itself governing quarantine, and it's clear from the type of tailoring that we see uniformly applied in cases governing prophylactic detention without trial, cases like Fusche v. Louisiana, O'Connor v. . . But the case law says that clearly established law must be particularized, must be beyond debate. What can you point us to that is particularized and makes this beyond debate? Well, the underlying liberty deprivation is the same in all these cases. The fundamental . . . Sounds like you're saying there isn't a case just like this one. Well, a court in the circuit did apply the Shelton v. Tucker least restrictive means test in a quarantine case. It is not precedential, but at minimum these cases establish that it should have been clear that confining plaintiffs without providing them notice and when there was no legitimate public health reason is a violation of their constitutional rights. So are there any cases that involve some kind of infectious disease or health risk in quarantine? Plaintiffs point to Best v. St. Vincent's, but again, in light of the specific facts underlying this deprivation, the fact that they were confined with essentially no legitimate state reason, it's the nature of that deprivation that gives rise to the constitutional violation and cases like United States v. Lanier and Hope v. Pelzer are clear that deprivation of liberty for any reason warrants due process and that was missing here. The standard of least restrictive means requiring probable cause and notice had a clear application in the facts alleged. The CDC at all . . . Excuse me, this is Judge Winder. Do I understand this was a dismissal in the pleadings? Yes, it was. What discovery would you have sought if it had moved to summary judgment stage? Plaintiffs would have sought discovery about the decision-making process. Why was it that Defendant Mullen decided to impose a blanket quarantine on all travelers from West Africa? Why was it that on October 27th the state decided to revise down its initial blanket quarantine policy in favor of the recommended mandatory active monitoring and yet didn't . . . Can you clarify the question? Isn't the test whether a reasonable official would have believed that he or she had authority to do something, not a subjective test of why they did something? That is correct, but on the facts pled in the complaint, we believe that there was no objective basis on which a reasonable . . . Your answer is I'm going to seek what was going on in their mind. Well, we think that it might help explain some of the seemingly arbitrary and irrational decisions that were made that ended up infringing on plaintiffs' due process rights. So, for example, as I said, on October 27th, 2014, the state revised its initial blanket quarantine policy in favor of a policy of mandatory active monitoring and yet it did not revisit its initial decision to confine all eight of the plaintiffs in quarantine. And, in fact, the Mensa Sey plaintiffs continued to languish in a basement for two additional weeks. Had a seventh member of the Mensa Sey family arrived in Connecticut on October 28th, they would have been treated completely differently by the state. And that is the definition of arbitrary, and it's a violation of any constitutional standard, both the one that plaintiffs urged the court to apply in this case, requiring least restrictive means, but also old standards like Jacobson, which explicitly contemplates that the state can exert power in such an arbitrary and oppressive manner as to justify the interference of the court to prevent such wrong. I see my time is about to expire, and I would just ask that this court vacate . . . or reverse the lower court's ruling and remand so that the parties can proceed with discovery or, in the alternative, decide to clarify the law on this point. I also think it is worth belaboring a little bit the procedural due process claims in this case, as they were dismissed sort of without analysis in a footnote devoid of legal citation. Those, at the very least, warrant a remand. There was no notice served on six of the eight plaintiffs, a seventh plaintiff. Yes, help me understand the record on that point, because the state argues that your clients failed to avail themselves of the opportunity to go to court and that they never asked to be released and were refused. At one point, they argued that that's what distinguishes this case from best, I believe. Correct. I mean, so six of them didn't receive notice, and we can infer that they didn't know they had a right to challenge their confinement. And it is true that . . . I mean, a seventh plaintiff received the notice five days late, and an eighth plaintiff received it and did not challenge the confinement. We argue, plaintiffs argue, that the proceedings should have been automatically initiated by the state, as the onus was on the state to justify the confinement, and they did not do so. But, most concretely, the fact that there was a breakdown in serving notice on these six plaintiffs is a facially plausible procedural due process violation. And your argument is that the process that's due is that the state actually has to initiate the hearing. It's not enough to give a notice. You have a right to hearing, which you can avail yourself of if you wish. I see my time has expired, ma'am. You may answer, since I asked the question. In this context, given the gravity of the deprivation of liberty at stake, yes, we believe that there is an affirmative obligation to initiate the hearing on the part of the state. Thank you. Good morning, Your Honors. May it please the Court, I'm Assistant Attorney General Rob Dykert, representing the defendants. As Your Honors recognized, there is no clearly established law in this area. Plaintiffs display- I know that we recognize that, but you were asking whether there was any. Okay, I apologize, Your Honor. There is no clearly established law in this area. The district court acknowledged that, recognized that. Plaintiffs have not provided a single case law in the particularized context of disease quarantines. And plaintiffs and their amici on appeal have not cited to anything that's controlling this area. Best? Best, Your Honor, is a, there's a variety of reasons why Best is not clearly established law for qualified immunity purposes. One is that this court's decision in Best was a summary order, which this court has held does not clearly establish the law for qualified immunity purposes. In addition to that, the district court's opinion in Best is highly distinguishable from this case. And district court decisions by definition cannot clearly establish the law. And notably, both the district court in this case and the district court in New Jersey in the Hickox case both concluded that Best was not persuasive on this issue. What about the Connecticut statute? I mean, it's in the statute that it should be the least restrictive means. Is that not sufficient to put a reasonable officer on notice that she has to use the least restrictive means? Your Honor, that's, the key distinction is that that's a statutory issue. And this court has consistently held that the simple fact that a state statute has requirements does not mean that a violation of the statute translates into a due process violation. And so really the question here is what is clearly established law that was required in a due process scenario and there simply is no clearly established law in this particularized contest of disease quarantines. And the Supreme Court's recent decision in Westby, which we provided in a 28-J letter, discusses that, I think really reinforces the correctness of the district court's decision. Now I'd like to briefly, I'd like to address the plaintiff's argument on procedural due process. Now, it's important to keep in mind, so we're looking at three different orders. You have, there is an order as to Mr. Boyko, which is attached, was a written order, is attached to plaintiff's complaint as Exhibit D, and it appears at Joint Appendix 74. That was a written order explicitly informing Mr. Boyko of his right to seek judicial review through the statutory procedure available in Connecticut. Mr. Boyko received that notice in a timely fashion and did not invoke the statutory procedure. It's well established that if there is an available state remedy and the plaintiff does not invoke it, there is no procedural due process violation. That's, among other cases, the Rivera-Powell case by this court, which we cite in our briefing. In addition, as to the notice to the family, in addition to the notice to Mr. Boyko, there's also attached to the complaint a notice to Ms. Scripp. Now, Ms. Scripp is not seeking damages in this case, so her notice is not necessarily at issue for qualified immunity purposes. But that notice, again, was in writing, provided information as to how to challenge it under Connecticut law. Now, plaintiffs do allege that they were not given written notice of the quarantine as to the family. And, Your Honor, Judge Livingston, the allegations begin at paragraph 111 of plaintiff's complaint. And so plaintiffs allege that they were given oral notice of the quarantine order by the West Haven Director of Public Health, and that they claim that notice was defective constitutionally because it failed to give them explicit notice of their ability to challenge it under Connecticut law, to challenge the quarantine order. Now, there is no, again, there is no clearly established law on that in the infectious disease context. And, in fact, to the extent there is law that could potentially be analogous, it goes the other way and, in fact, establishes that the notice here was sufficient. There's nothing inherently defective with oral notice. This Court has recognized that in many circumstances, including the Faygree case, 621 F. 3rd, 92. I recognize that the statute is not determinative of the constitutional question, but the Connecticut statute, correct me if I'm wrong, it does say that notice should be in writing and should inform you of your opportunity to have a hearing on the issue. It does, Your Honor, it's true, the statute does say the notice should be in writing, but the statute also does not explicitly require service of a copy of the written notice. If you look at page 7 of our supplemental appendix, it provides that a copy must be provided or. . . What is the point of a written notice if it's not served? That's, again, like there may be an issue as to the, based on plaintiff's allegations, there may be an issue as to statutory compliance. But really the issue for purposes of today is due process clearly established. And this Court's decision in Lopez, 445 F. 3rd, 90, in that case, then judge, now Justice Sotomayor, dealt with this claim in a due process claim that a deportation notice was defective, administrative notice of deportation was defective because the plaintiff did not, was not advised of his right to challenge the notice in the notice itself. And this Court unanimously rejected that argument, saying that under established Supreme Court law, that once you receive an order of consequence, a deportation order or a quarantine order in this case, you are on inquiry notice to determine what your remedies are if you want to challenge it. Now keep in mind, Your Honors, there's nothing in this complaint that gives any indication that Dr. Mullen was ever advised the plaintiffs were concerned about the quarantine or wanted to be released. And so when you look at, for example, with Mr. Boyko, received notice, written notice, chose not to challenge it. With regard to the family, they received oral notice according to plaintiff's allegations. They were on the phone three times a day with West Haven. At no point did anyone, is there any indication that anyone asked that they be released? And so when we're looking at the qualified immunity determination for damages liability for Dr. Mullen, the question is what Dr. Mullen knew or is aware of, and that's this Court's, among other decisions, this Court's recent decision in Gansik. And Gansik discusses the idea of supervisory liability and the allegations that need to be made in order to impose liability on a supervisor in a situation where the supervisor relies on subordinates to perform tasks. So even assuming, for the sake of argument, that there was a defect in the notice, that there's no allegations that would tie that to Dr. Mullen in these circumstances. And when you look at the complaint, Your Honors, everything involving the day-to-day implementation of the quarantines was done by local officials. The calls were made by local officials. The local police were the ones enforcing the perimeter. Dr. Mullen, and that's consistent with generally the way quarantines work under Connecticut law. Absent an emergency declaration, which there was in this case, usually local officials do the quarantines and implement the quarantines and provide for things. Now, in this case, there's an allegation that the quarantine continued even after the policy had been revised to be less restrictive. There is an allegation to that effect, Your Honor. And, again, I think the key point with regard to that is, from Dr. Mullen's perspective, the plaintiffs were aware, like they had been advised of the quarantine initially before the policy had changed. They had an opportunity at any point if they wanted to be released. It's a very simple, streamlined process under Connecticut law. You can make a request in writing through any means that you can, and then you will have the opportunity to obtain judicial review through the probate court at which the state would bear the burden of justifying the quarantine. And so there's no clearly established law that says that that is a violation of due process. Does the state dispute whether quarantine was medically necessary here? Yes. The state believes that quarantine was medically necessary. And on motion to dismiss, do we assume that it was not necessary because of the allegations in the complaint? Your Honor, the allegations of the complaint, the question is not whether it was medically necessary or not. The question is whether it was clearly established that no— Well, that's on qualified immunity, but on the merits, if we were to do the merits. It is a significant question whether quarantine was medically necessary. Correct? On the merits? Well, I think, Your Honor, that gets to the underlying—one of the underlying concerns here, which is who gets to make the decision of whether a quarantine is medically necessary. Now, my first question simply was whether it was disputed, and don't we, for purposes of a motion to dismiss, have to assume that quarantine was not medically necessary because that's what's alleged. There's certainly some basis to support the allegation, including the CDC's recommendation. Your Honor, for purposes of the qualified immunity analysis, you're right. They allege that it was not medically necessary, but that's really a conclusory allegation. When you look at the kind of facts surrounding it and the kind of the— My question is whether there is no possible way that a medical professional could have concluded that what she did was appropriate under the circumstances. And, you know, I believe that it's—my time has expired, Your Honor. Please proceed. The—and under the circumstances for qualified immunity purposes, it's not enough to simply allege that it was medically unnecessary. It needs to be clearly established that it was constitutionally unreasonable, and that's not true here. Thank you, Your Honors. Your Honors, may I please the Court? With respect to the procedural due process claim, our clients include— our clients who did not receive notice were a family of six new immigrants, and I think the notion that they were comfortable being in quarantine, that the state needed affirmative advice, that they wanted to be out of quarantine, and also that presumptively they can have been understood to know what procedurally they needed to do to get out of that situation is unrealistic in a later situation. That's why notice is the touchstone of procedural due process. It's why it was crucial that our clients receive notice of their rights and specific notice of how they could challenge their improper and unlawful quarantine. On the merits of this case, I want to emphasize that we know that there is a— that Ebola is not the flu, that symptoms precede contagiousness, and Ebola is very difficult to transmit, although it is quite dangerous once it's acquired. As a result, intermediate restrictions like active monitoring, regular monitoring, a number of ways to determine whether disease is onsetting other than quarantine, less restrictive than taking away someone's liberty, those are completely sufficient to protect the public health. And Dr. Mullen, because of her position as a medical professional, as someone responsible for discharging— You're right. Was that clearly established? Was it clearly established at the time that it's very difficult to transmit? As, Your Honor, it was. And if we have the opportunity to proceed to discovery, there's lots of evidence that we can bring to bear on that. We can bring together experts related to what the underlying science of Ebola was, what the underlying—what the status of the science of Ebola was at the time of these quarantines, and what the consensus in the community of medical and public health professionals was with respect to the science at this time. And all of that is why, Your Honors, Dr. Mullen's actions here were an outlier. They were an outlier as compared to the CDC's recommendations. They were also an outlier as compared to what every other state was doing in the country. And it's why, on October 27th, the state revised its own policies to set up a new framework whereby people in our client situations who were asymptomatic and who had not been exposed to Ebola had not had direct physical contact with sick people and their bodily fluids when they were in West Africa. People like that would not be quarantined. And yet, even after October 27th, our clients were in quarantine for nearly two weeks. We don't know why. Even according to the state's own policies, their justifications, their logic, their positions at the time, they should not have been. And I think we need to take discovery to find out why that happened. With regard to the family, they did not—the allegations are that they received no notice before they went into quarantine. The notice under Connecticut law would have told them you can have a hearing, you have a right to attorney, we'll appoint an attorney. But they didn't receive that notice according to the allegations. And then they didn't get any follow-up notice that there had been a revision to the guidelines. Exactly, Your Honor. I see my time's running short. I just want to add on the clearly established— Is it all right if I address the clearly established law point that Judge Chin was asking about? So our view is that this is unconstitutional under any standard. That whether or not there's been a specific case on point, whether or not the applicable law— Everyone knows in America, just because of what it means to be free, that you can't take away someone's liberty for 21 days when it's not going to provide any additional public health protection or public safety protection as compared to the alternatives. And whether you take that from Jacobson, whether you take that from a long line of substitute process cases that one way or another require narrow tailoring analysis with respect to all fundamental liberty deprivations, which this was. You have to tailor. Even with a compelling state interest, you have to tailor it, right? And then you have the fact that the state statute that she operated under expressly contained the same requirement. And I would add that the Hope v. Pelzer case of the Supreme Court expressly says that a state statute can help to give notice as to what the Constitution requires. It can't establish the constitutional right, but it can help to give the state official notice of what the law already requires. All that together clearly establishes this, and by any standard, really. Thank you for your arguments. Very well argued.